UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DONETTA A. RHABURN,<br>            Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 2:20-CV-487-JPK |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security,<br>            Defendant. | )<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], and Plaintiff's Opening Brief [DE 19]. Plaintiff Donetta Rhaburn requests that the May 22, 2020 decision of the Administrative Law Judge (ALJ) denying her claim for disability benefits be reversed and benefits awarded. For the following reasons, the Court grants Plaintiff's request for remand, but declines to award benefits.

**PROCEDURAL BACKGROUND**

On July 24, 2018, Plaintiff applied for disability benefits, alleging disability beginning June 23, 2017. Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on March 18, 2020. On May 22, 2020, the ALJ issued an unfavorable decision, making the following findings[1]:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since June 23, 2017, the application date.

3. The claimant has the following "severe" impairments: degenerative disc disease of the lumbar and cervical spine; right shoulder impairment status-post SLAP of the right shoulder; left ankle impairment with tendinitis; left knee impairment; obesity; depression; anxiety; and post-traumatic stress disorder.

---

[1] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps and stairs but can never climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can frequently reach, handle, finger and feel with the bilateral upper extremities. She can have no more than occasional exposure to extreme heat and cold, wetness, vibration, and hazards, such as wet surfaces, vibration, unprotected heights and dangerous heavy machinery. The claimant can understand, remember, and carry out simple tasks, make simple work related decisions, deal with occasional changes in work processes and environment. She can have occasional interaction with coworkers, supervisors and the general public.

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was [. . .] 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled", whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 23, 2017, through the date of this decision.

(AR 17-28)[2].

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

Plaintiff appealed, but the Appeals Council denied review. (AR 1-3). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for benefits, a claimant must establish that she suffers from a "disability," defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff alleges she became disabled shortly after she fell in a grocery store in June 2017, injuring her back, leg, and shoulder. (*See* AR 59, 577-580). She testified that despite a surgery on

her right shoulder, she continues to have pain, numbness, and weakness and decreased range of motion in her arm; difficulty walking exacerbated by a torn meniscus in her knee; and pain in her neck and back exacerbated by arthritis and degeneration of her spine. (AR 59-65). Injections and medication provided only temporary relief (AR 67-69), and she developed anxiety attacks related to the pain (AR 87-88). She alleged that she experiences significant pain sitting for more than 10 minutes (AR 70), and struggles with activities of daily living including cooking, dressing, hair care, cleaning, and laundry (*see* AR 276-82). Her treating orthopedist indicated that she was "incapable of even 'low stress' jobs." (AR 1289). However, there was conflicting medical evidence in the record, including some normal findings on physical examinations, and two state agency examiners opined that Plaintiff could do certain kinds of sedentary work. (*See* AR 22-24, 107, 127). The ALJ ultimately found that Plaintiff could perform sedentary work with some additional limitations. (AR 20).

Plaintiff asserts three grounds for reversal of the ALJ's decision: that the ALJ made logical errors in assessing the opinion of Plaintiff's orthopedist, failed to properly support the RFC findings, and did not properly evaluate Plaintiff's subjective complaints. The Court finds that the first two arguments require remand.

## I.     Opinion of Bernard Rerri

Plaintiff first argues that the ALJ improperly evaluated the opinion of Dr. Bernard Rerri, Plaintiff's orthopedist. For claims filed after March 27, 2017, as Plaintiff's was, the regulations no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Therefore, the so-called "treating physician rule" – which gave special deference to a claimant's own doctor unless the ALJ provided a "good reason" – no

longer applies. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). Nonetheless, the ALJ must still provide a written explanation for her conclusion about the treating physician's opinion, drawing a logical bridge from the evidence to the conclusion. *See Giza v. Kijakazi*, No. 2:20-CV-00263-SLC, 2021 WL 4551387, at *5 (N.D. Ind. Oct. 5, 2021); *Inman v. Saul*, No. 1:20-CV-231-DRL, 2021 WL 4079293, at *3 (N.D. Ind. Sept. 7, 2021); *Tammy M. v. Saul*, No. 2:20-CV-285-WCL, 2021 WL 2451907, at *7 (N.D. Ind. June 16, 2021).

Moreover, the ALJ must still weigh the same factors in considering medical opinion evidence: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length and purpose of the relationship; (4) specialization; and (5) any other factors that would "tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c, 416.920c. The "most important factors" are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ is not required to explain how the other factors were considered, but can address them as appropriate. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Dr. Rerri offered his opinion on a form with checkboxes and short answer prompts. In summary, he stated that Plaintiff could sit for 30 minutes at a time, and stand for 5 minutes at a time, but could not do either for more than two hours a day. She could walk for no more than one city block without pain or needing to rest. At work, she would need to have unscheduled breaks, and to change position every 30 minutes, among other physical limitations. As noted above, the doctor concluded that Plaintiff was "[i]ncapable of even 'low stress' jobs." (AR 1287-1289). The ALJ found Dr. Rerri's opinion "unpersuasive," and provided the following analysis:

> Dr. Rerri's opinion was inconsistent with the longitudinal medical evidence that showed the claimant had normal strength, normal sensation, normal reflexes, a generally normal gait, and did not use an assistive device in multiple examinations. It was noted that she had 5/5 strength in all four extremities, including plantar and dorsiflexion at the ankles, flexion/extension at the knees, biceps, triceps, and

       normal grip strength. Consequently, the undersigned finds this opinion unpersuasive.

(AR 24-25 (citations to record omitted)).

       The ALJ is specifically obliged to consider both the "supportability" and the "consistency" of every medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(2). "Supportability" is the extent to which the medical provider's evidence and explanations support his conclusions; "consistency" is how well the opinion corresponds to the evidence from all sources. *Id*. On the issue of consistency, Plaintiff argues that the ALJ ignored evidence of disability, and "failed to recognize that Dr. Rerri's findings were consistent with the longitudinal evidence." Pl. Br. 12-14.

       This argument slightly misconstrues the ALJ's findings. Throughout the decision, the ALJ acknowledged many of the medical findings that could have supported Dr. Rerri's conclusions. For example, the ALJ described the following findings and supporting records:

- "[P]ain in lumbar spine, lumbar spondylosis without myelopathy and degeneration of the cervical intervertebral disc" (AR 22 citing AR 727, 1312);
- "[T]enderness and muscle spasms in the lumbar and cervical region" (AR 22 citing AR 1140, 1292, 1340);
- "[R]educed range of motion and moderate to severe pain on range of motion in lumbar and cervical spine" (AR 22 citing AR 726, 1358);
- "[D]ecreased range of motion, tenderness, pain and/or spasms in the right shoulder" (AR 22 citing AR 572, 927);
- "[T]race tenosynovitis of the tibialis tendon and marked soft tissues swelling around ankle" (AR 22 citing AR 1117);
- "[P]ain [in] the lower limb and tibialis posterior tendinitis in the left ankle" (AR 22 citing AR 944, 1248).

The Court considers all of these findings in assessing the ALJ's relatively short discussion of Dr. Rerri's opinion. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("To require the ALJ to repeat such a discussion throughout his decision would be redundant.").

The ALJ found that Dr. Rerri's opinion was "inconsistent with the longitudinal medical evidence that showed" Plaintiff had normal strength, sensation, range of motion, reflexes, and gait in multiple examinations. (AR 24-25). So the ALJ did acknowledge some evidence of disability, but found Dr. Rerri's opinion unpersuasive based on other evidence that weighed against disability. It is the ALJ's job to resolve conflicting evidence, *McKinzey*, 641 F.3d at 890, so there is nothing wrong with that conclusion in the abstract. However, the ALJ needed to explain the reasons for that conclusion: why did Plaintiff's "normal" findings outweigh the other medical records documenting her injuries? *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) ("An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence."); *Pamela B. v. Saul*, No. 2:20-CV-340, 2021 WL 2411391, at *5 (N.D. Ind. June 14, 2021) ("[T]he ALJ summarized evidence both in support of and against a finding of disability. However . . . the ALJ was required to explain why evidence of normal findings were more probative than evidence supporting a finding of disability.").

The ALJ did not provide that explanation, and none is apparent from the Court's review of the record. The ALJ cited 14 pages collectively indicating that Plaintiff had "normal strength, normal sensation, normal reflexes, a generally normal gait, and did not use an assistive device in multiple examinations." (AR 24-25).[3] This was a string citation, so the ALJ presumably did not mean that each page separately established each of those conclusions. Nonetheless, the ALJ

---

[3] (*See* AR 24-25) (citing AR 710, 726, 768, 785-86, 912-14, 954, 1151, 1292, 1301, 1323, 1358).

8

"cherry-picked" from these 14 pages, by listing only "normal" findings and ignoring abnormal findings that contradicted the ALJ's conclusions. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Hart on behalf of JMH v. Kijakazi*, No. 1:21-CV-462-PPS, 2022 WL 3053937, at *4 (N.D. Ind. Aug. 3, 2022) (remanding where ALJ cherry-picked from one page and ignored contrary evidence from that same page). For example, one of the notes documents "5/5 strength in all four extremities," but the ALJ did not mention that Plaintiff "ambulate[d] with difficulty" and "exhibit[ed] moderate to severe pain with range of motion maneuvers of the lumbar spine." (AR 726). Another page indicated "normal station and base" with regard to Plaintiff's gait, but the ALJ did not mention the "decreased" sensation in her legs. (AR 768).[4] Yet these notes were cited for the premise that Plaintiff had normal sensation and normal gait. The ALJ did not explain why normal findings were probative as to Plaintiff's strength, sensation, and gait, but abnormal findings from the same examinations were not probative on those same topics.

Even looking at the "normal" findings, Dr. Rerri's opinion appears to be consistent with many of the supposedly inconsistent notes highlighted by the ALJ. For example, the ALJ cited a pain specialist's findings that Plaintiff had "normal strength" as inconsistent with Dr. Rerri's opinion. (AR 25 citing AR 1213 ("5/5 strength in all four extremities, including . . . normal grip strength")). But Dr. Rerri never explicitly questioned Plaintiff's strength in her extremities: he found that she had no gripping limitations, and could lift less than 10 pounds "frequently," 10 pounds "occasionally," 20 pounds "rarely," and 50 pounds "never."[5] (AR 1288-89). Dr. Rerri

---

[4] (*See also* AR 785-86 (decreased sensation in legs), AR 912-14 (limp, and pain aggravated by walking), AR 1301 ("ongoing lumbar pain and hypersensitivity")). These were among the notes cited for the premise that Plaintiff had "normal sensation . . . [and] a generally normal gait." (AR 24-25).

[5] A finding of 5/5 muscle strength simply means the muscle can "activat[e] against [the] examiner's full resistance." *See Muscle Strength Grading*, National Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK436008/ (last accessed September 13, 2022). So it is not obvious that Dr. Rerri's opinion about Plaintiff lifting heavier weights contradicts the "5/5 strength" examination findings; regardless, the ALJ did not refer to any medical opinion

made clear that Plaintiff's primary symptom was pain. (*See* AR 1287). The fact that a person with severe pain can also have "normal" strength was acknowledged within the same treatment note the ALJ cited against Dr. Rerri. (*See* AR 1214 (pain specialist prescribing Norco and gabapentin for "breakthrough" leg and back pain despite findings of normal strength)); *see also Manns v. Comm'r of Soc. Sec.*, No. 3:20-CV-01040-SLC, 2022 WL 950630, at *7 (N.D. Ind. Mar. 30, 2022) ("The ALJ's observations about Manns's strength, gait, and sensation . . . are not necessarily inconsistent with disabling chronic pain."); *Fansler v. Astrue*, No. 1:07-CV-00081, 2008 WL 474205, at *7 (N.D. Ind. Feb. 19, 2008) ("Rollins's chief complaint is pain, *not* muscle weakness; the ALJ has not pointed to, nor does a review of the record reveal, a medical opinion that articulates an individual's muscle strength must be diminished if he is suffering from chronic pain.") (emphasis in original).

Similarly, the ALJ cited evidence of Plaintiff's "generally normal gait" as inconsistent with Dr. Rerri's opinion (AR 25), but Dr. Rerri did not check the box to indicate Plaintiff had an abnormal gait; he simply concluded that she could not walk very far without "severe pain." (AR 1287, 1289); *see Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) ("[The ALJ] didn't explain why, if the applicant's evidence of pain were truthful, it would imply that he limps."). Ultimately, even accepting that there were some inconsistencies between Dr. Rerri's opinion and the (roughly 1000 pages of) treatment notes, the ALJ still needed to say why they outweighed the evidence that supported the doctor's opinion. *Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1039 (N.D. Ind. 2010) ("The ALJ erred in failing to explain how the [inconsistent] evidence overcame that which supported [the doctor's] opinion.").

---

supporting that conclusion. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

The ALJ's analysis of supportability – the extent to which Dr. Rerri's own notes supported his opinion – was also lacking. Admittedly, there was only one note of Dr. Rerri's in the record, the report from his May 2019 physical exam of Plaintiff. (AR 1290-1293). In assessing Dr. Rerri's opinion, the ALJ listed that report among the 14 citations collectively indicating "normal strength, normal sensation, normal reflexes, a generally normal gait, and [no] assistive device in multiple examinations." (AR 24-25). But aside from this passing reference, the ALJ made no explicit analysis of how well the exam report supported the opinion. *See* 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability and consistency are the most important factors we consider . . . Therefore, we will explain how we considered the supportability and consistency factors.").

The extent to which the exam report supports Dr. Rerri's opinion is open to interpretation. The report reflected many of Plaintiff's complaints, including lower back pain and a "burning sensation" in her back and legs (AR 1291). It documented 4/5 strength in ankle dorsiflexion, and positive straight leg raises in the supine and seated positions, among other findings. (*See* AR 1292). As the ALJ noted elsewhere in the decision, it also showed tenderness and muscle spasms in the lumbar and cervical region. (*Id.*). At the same time, the report also appears to show that flexion, extension, and rotation of the spine were normal, including "no pain with motion." (*Id.*). On remand, the ALJ must undertake the required analysis of supportability and explain why it makes the opinion more or less persuasive. Although the regulations do not require that a doctor's specialization be discussed in the ALJ's decision, § 404.1520c(b)(2), the ALJ must also "consider" that Dr. Rerri is an orthopedist and may have specialized expertise about Plaintiff's problems that other doctors and examiners do not. § 404.1520c(c)(4) ("[A] medical source who has received advanced education and training to become a specialist may be more persuasive . . . [than] a medical source who is not a specialist in the relevant area of specialty").

11

## II.        RFC (Sitting)

Plaintiff also objects that the ALJ failed to properly justify the lack of a sitting limitation in the RFC. Although the case is remanded for the reasons described above, the Court agrees that this issue would provide an additional basis for remand. Plaintiff testified that she experienced significant pain sitting for more than 10 minutes at a time (AR 70). She made similar complaints to her doctors. (*See*, *e.g.*, AR 780, 853 (Plaintiff presented with "poor, slouched posture" and "frequently shift[ed] in [her] chair"), 1318-19, 1324). Dr. Rerri opined that Plaintiff could sit for no more than 30 minutes at a time (AR 1290). State agency examiner M. Brill opined that Plaintiff could sit for two hours in a workday (AR 102); on reconsideration, a second examiner, J. Sands, opined that she could sit for six hours in a workday (AR 121).[6] The ALJ ultimately found that Plaintiff could do sedentary work with no further limitation on sitting, which means she would have to sit for most of the workday. *See* 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, *3 (July 2, 1996) (for sedentary work, "[s]itting would generally total about 6 hours of an 8-hour workday"); Dictionary of Occupational Titles, App'x C, § IV(c) ("Sedentary work involves sitting most of the time").

The ALJ relied on the state agency examiners' opinions in crafting the overall RFC, finding them "generally persuasive" because they were "generally supported by their explanation[s]" of the evidence, notably the examination findings of normal strength, normal gait, and "no noted stenosis." (*See* AR 24). To the extent this comment applied to the examiners' opinions on sitting, the ALJ did not say how those findings showed that Plaintiff could sit for long periods. And despite the ALJ's finding that the examiners' opinions were "generally supported by their explanation[s],"

---

[6] It is not clear why the ALJ followed the opinion of Dr. Sands, who imposed a six-hour sitting limitation, rather than that of Dr. Brill, who suggested a two-hour limit, since the ALJ analyzed both state agency opinions together and found them both "generally persuasive." (AR 24).

neither examiner explained how they arrived at their sitting limitation, or discussed any of the medical evidence about sitting, aside from noting that Plaintiff "reported issues" with sitting. (*See* AR 98, 102, 121).

The ALJ had to consider not just the evidence that Plaintiff had the strength to sit briefly on an examination table – which is undisputed – but the evidence that she was unable to sit for long periods because of her pain. *See Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The ALJ overstated findings from three diagnostic tests to discredit Gerstner's complaints . . . [Gerstner never claimed] that her condition totally impaired the abilities tested in these exams. Instead, she said that her pain was triggered by prolonged sitting, standing, or activity and stress."); *Aguilar v. Saul*, No. 2:19-CV-61-PPS, 2020 WL 220022, at *3 (N.D. Ind. Jan. 14, 2020) (although the claimant could sit for a short time without pain, the ALJ's "failure to fully address the evidence related to [his] ability to sit for prolonged periods of time" required remand); *Shank v. Comm'r of Soc. Sec.*, No. 1:16-CV-00184-SLC, 2018 WL 417175, at *6 (N.D. Ind. Jan. 16, 2018) (given the claimant's complaint of lower back pain, findings of normal gait and leg strength did not speak to his ability to sit for a long period).

Here again, the ALJ appeared to cherry-pick from the record: the ALJ neglected any doctor's note that directly supported Plaintiff's allegations that she could not sit for long periods, while citing notes from those same doctors as evidence of Plaintiff's normal strength, reflexes, and so on.[7] On an issue like this, the Court sympathizes with the ALJs, who are asked to scour the record and account for a seemingly endless litany of potential limitations. But prolonged sitting is vital to sedentary work, so in this case, the ALJ effectively "ignor[ed] an entire line of evidence

---

[7] (*See, e.g.*, AR 24, citing AR 785 but ignoring the doctor's note from a month prior (AR 780) indicating "back pain worsens when sitting"; AR 25, citing AR 1323 but ignoring the exam from the same day indicating limited range of motion, "slouched posture," and Plaintiff's complaint of not being able to sit for long periods (AR 1318-19)).

that supports a finding of disability," and the decision must be reversed. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).

### III.     Request for Award of Benefits

Plaintiff requests that the Court reverse and remand for an award of benefits or, in the alternative, for a new hearing. "Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Nonetheless, "[a]n award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* at 415. Given the conflicting medical evidence described above, the record does not clearly show that Plaintiff is disabled, so the Court remands without awarding benefits.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** the relief sought in Plaintiff's Opening Brief [DE 19] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 13th day of September, 2022.

s/ Joshua P. Kolar<br>
MAGISTRATE JUDGE JOSHUA P. KOLAR<br>
UNITED STATES DISTRICT COURT